**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL KAMIENSKI<br><br>          Plaintiff,<br><br>               v.<br><br>ATTORNEY GENERAL FOR THE STATE OF NEW JERSEY, MARLENE LYNCH FORD, THOMAS F. KELAHER, JAMES W. HOLZAPFEL, RONALD DELIGNY, JOHN MERCUN, SAMUEL J. MARZARELLA, E. DAVID MILLARD, JAMES A. CHURCHILL, DANIEL MAHONEY, JEFFREY P. THOMPSON, OCEAN COUNTY PROSECUTOR'S OFFICE, and COUNTY OF OCEAN<br><br>          Defendants. | Civil Action No. 11-3056 (PGS)<br><br><br><br>**MEMORANDUM & ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court by defendant's, County of Ocean, motion for summary judgment (ECF No. 30). Plaintiff, Paul Kamienski, has filed a complaint alleging fourteen causes of action including: (1) § 1983 violations for suppression of material exculpatory evidence, fabrication of inculpatory evidence, malicious prosecution, and deliberate failure to investigate; (2) § 1983 supervisory liability; (3) § 1983 *Monell* claim; (4) state law claim for malicious prosecution; (5) violations of New Jersey's Civil Rights Act, N.J.S.A. 10:6-2 *et seq*.; (6) intentional infliction of emotional distress; (7) abuse of process; (8) loss of reputation; (9) intentional interference with economic advantage; (10) actual and constructive fraud; (11) negligent misrepresentation; (12)

negligence; (13) injunctive relief to expunge criminal record; and (14) injunctive relief generally (counts 13 and 14 referred to as injunctive claims).  As part of the plaintiff's complaint, he seeks to hold the County of Ocean liable for  actions taken by Jeffrey P. Thompson, a detective and science officer with the Ocean County Sheriff's office as well as members of the Ocean County Prosecutor's Office.  The County of Ocean is seeking dismissal of plaintiff's federal claims, state civil rights claims and tort claims with respect to the County.  On July 10, 2012, the Court held oral argument on this matter and allowed supplemental briefing with respect to plaintiff's state law claims and notice under the Tort Claims Act.

## I.   **Facts and Procedural History**

This action arises out of plaintiff's 2009 exoneration from a 1988 jury conviction for murder. Plaintiff alleges that he was wrongfully and maliciously arrested and prosecuted, and imprisoned for 21 years for two counts of first degree murder and one count of felony murder.

In September 1983, the Ocean County Prosecutor's office investigated the murder of two victims who were found in Barnegat Bay in Toms River, New Jersey.  Compl.¶ 30.  The two bodies were found bound in blankets, tethered to cinder blocks, and apparently thrown overboard from a boat.  *Id.*  Both victims had died from multiple gunshot wounds.  *Id.*  The investigation uncovered that the victims were high volume cocaine sellers.  *Id.*  Nearly four years later, on October 7, 1987, plaintiff was charged with the following five counts of a seven count indictment, along with two other co-defendants:  Counts One and Two: first degree murder of victims 1 and 2 (N.J.S.A. 2C:11-3a (1)-(2)); Count Five: first degree felony murder of victims 1 and 2 (N.J.S.A. 2C:15-1; 2C:11-3a(3)); Count Six: conspiracy of possession with intent to distribute the cocaine after it had been stolen from the victims (N.J.S.A. 24:21-19a) and/or conspiracy to commit robbery in the first degree

2

(N.J.S.A. 2C:15-1), and/or murder (N.J.S.A. 2C:11-3;   2C:5-2); Count Seven: conspiracy of possession with intent to distribute prior to the murders and robbery (N.J.S.A. 2C:5-2; 24:21-19a1). *Id.* at ¶ 31.

The plaintiff was prosecuted for murder on an accomplice liability theory, that is the plaintiff did not know of or plan the killings, but helped cover them up afterwards. *Id.* Additionally, plaintiff was not accused of being involved with the aborted drug deal, but the state determined that plaintiff had introduced the two victims to the co-defendant buyers knowing they were contemplating a cocaine sale. *Id.*

On November 18, 1988 a jury found plaintiff guilty of Counts One, Two, Five,  Six (only as to the conspiracy to distribute), and Count Seven. *Id.* at ¶ 32.  On December 21, 1988, following post-trial motions, the trial court entered a judgment of acquittal for Counts One, Two, and Five (hereinafter the "Murder Convictions") based on insufficiency of evidence. *Id.* at ¶ 34.  The trial court affirmed plaintiff's convictions as to Count Six for conspiracy of possession with intent to distribute cocaine and Count Seven. *Id.*   Based on the trial court's rulings, the plaintiff was sentenced to twelve years with six years of parole ineligibility as to Count Six and twelve years with four years of parole ineligibility as to Count Seven, to be served consecutively. *Id.* at ¶ 35.  The prosecution appealed the trial court's judgment of acquittal. *Id.* at ¶ 36.

On February 19, 1992, the appellate division reversed the trial court's judgment of acquittal and reinstated the murder convictions. *Id.* at ¶ 37.   As a result, on April 10, 1992, plaintiff was sentenced to  two life sentences with thirty years parole ineligibility for the murder convictions and consecutive terms of twelve years imprisonment for the drug conspiracy convictions. *Id.* at ¶ 38. The New Jersey Supreme Court denied plaintiff's application for certification. *Id.* at ¶ 39.

On June 26, 2002, plaintiff filed a habeas petition under 28 U.S.C. § 2254 with the district court alleging, *inter alia*, that there was insufficient evidence adduced at trial to sustain the murder convictions. *Id.* Plaintiff later amended his habeas petition in September 2003 to include allegations that the state committed *Brady* violations by failing to produce exculpatory FBI forensic evidence. *Id.* at ¶ 41. The district court denied plaintiff's habeas petition on July 26, 2006. *Id.* at ¶ 42. Plaintiff timely appealed to the Third Circuit. *Id.* at ¶ 43. On May 28, 2009, the Third Circuit issued a unanimous opinion that reversed the district court's denial of plaintiff's habeas petition, and further held that there was insufficient evidence adduced at trial to support the murder convictions. *Id.* at ¶¶ 45-46. The matter was remanded to the district court to grant the habeas petition and order plaintiff's immediate release from state custody. *Id.* at ¶ 45. On June 15, 2009, the district court ordered plaintiff's release from custody with certain bail conditions, such as travel restrictions and regular, periodic reporting requirements. *Id.* at ¶ 48. Meanwhile, the state sought reconsideration of the Third Circuit's decision. *Id.*

On June 16, 2009, plaintiff was released from incarceration after serving 21 consecutive years based on the convictions of the charges contained in the indictment. *Id.* at ¶¶ 49-51. In July 2009, the Third Circuit denied the state's motions for reconsideration and for *en banc* review. Compl.¶¶ 52-54. The Third Circuit issued its mandate on plaintiff's appeal, and denied the state's motion to stay or withdraw the mandate. *Id.* On July 30, 2009, the district court granted plaintiff a writ of habeas corpus consistent with the Third Circuit's decision, vacated plaintiff's judgment of conviction, released plaintiff from further confinement for the charges, and expunged the conviction and the charges form his criminal record. *Id.* at ¶ 55. In September 2009, the state filed a petition of certiorari to the U.S. Supreme Court to reverse the Third Circuit's exoneration ruling, but cert.

was denied. *Id.* at ¶ 56-57.

On January 20, 2010, the district court vacated all conditions of bail that were imposed since plaintiff's release on June 16, 2009. *Id.* at ¶ 58. Once the state exhausted the appeals process, the plaintiff commenced this action, and a separate action in state court pursuant to New Jersey's mistaken imprisonment statute, N.J.S.A. 52:4C-1 *et seq*., captioned *Paul Kamienski v. State of New Jersey Dept. Of Treasury*, MER-L-2106-10. *Id.* at ¶ 59–60. On August 24, 2009, plaintiff served a notice of tort claim on the State of New Jersey. Prior to filing these actions, plaintiff served a notice of tort claim on the State of New Jersey, but did not serve a notice of tort claim on the County of Ocean.

## II.    Summary Judgment Standard

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey*

*Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").  Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgement.  *Anderson*, 477 U.S. at 247-48.  If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor – that no reasonable jury could find for him, summary judgment is appropriate."  *Alevras v. Tacopina*, 226 Fed. App'x. 222, 227 (3d Cir. 2007).

## III.   Discussion

Plaintiff has raised a claim against the County of Ocean ("County") alleging in Counts Two and Three that his constitutional rights were violated under theories of supervisory liability because of an official policy, custom and prevalent practice, and failure to train, supervise, and discipline employees of the Ocean County Prosecutor's Office under *Monell v. Dep't. of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978).  The County moves for summary judgment against these claims on the basis that the County has no supervisory authority over the Ocean County Prosecutor's office ("OCPO") and therefore cannot be liable.  The County also moves for summary judgment against plaintiff's tort claims because of plaintiff's failure to file a notice of tort claim on the County.  Plaintiff concedes that the County does not have supervisory authority over the Ocean County

Prosecutor's office.  Instead, plaintiff argues that the County may still be liable because of its supervisory authority over the Ocean County Sheriff's Office and defendant, Jeffrey Thompson, is a detective with the Sheriff's Office.  Plaintiff asserted that pursuant to Fed. R. Civ. P. 56(f), a grant of summary judgment in favor of the County is premature absent discovery concerning the actions of the Ocean County Sheriff's Office.  In response, the County argues that Jeffrey Thompson, the only named defendant within the Ocean County Sheriff's Office, did not independently investigate plaintiff's criminal matter, and was acting as an agent of the OCPO.  As an agent of the OCPO, the County reiterates that they have no supervisory liability for the actions of OCPO employees.

**A.**     **Section 1983 and _Monell_ Liability**

In New Jersey, a county cannot be held vicariously liable for the actions of the county prosecutor's office and its detectives when the alleged tortious conduct arose out of the investigation of criminal activity.  _Wright v. State of New Jersey_, 169 N.J. 422, 438-43 (2001); _see also Landi v. Borough of Seaside Park_, 2009 U.S. Dist. LEXIS 17932, at *17-18 (D.N.J. Mar. 6, 2009)("New Jersey law forecloses Ocean [County] from exercising any authority over OCPO with respect to law enforcement functions . . . the alleged misconduct of OCPO and Petracca occurred under the supervision of the Attorney General.").  Under New Jersey constitutional and statutory authority, the county prosecutor's office is a constitutionally established office and is under the supervision of the New Jersey Attorney General, and not the county.  _Wright_, 169 N.J. at 437-38.  For these reasons, the plaintiff recognizes that he has no cognizable claim against the County for the OCPO's actions when investigating criminal conduct.

Unlike the county prosecutor's office, the county sheriff's office is not a separate legal entity from the county.  _Medina v. Cumberland Cnty_, 2011 U.S. Dist. LEXIS 48070 *6-7 (D.N.J. May 3,

2011).  Mr. Thompson certified that he was a detective and first science officer of the Criminalistics

Investigation Unit (CIU) in the Ocean County Sheriff's Department.  Thompson Cert., Def. Reply,

Ex. E.  Nonetheless, the County argues that although Mr. Thompson was employed and paid by the

county, he was acting as an agent of the OCPO when he investigated the plaintiff's criminal matter.

The County cites to *Wright*, where the court refers to the County Detective and County Investigators

Act, N.J.S.A. 2A:157-1 *et seq.*, which

> authorizes the prosecutor to appoint persons 'to be known as county
> detectives, to assist the prosecutor in the detection, apprehension,
> arrest and conviction of offenders against the law.'  The prosecutor,
> a State officer, selects and supervises them.  The financial burdens
> related to the position are imposed on the county."  *Wright*, 169 N.J.
> at 439-440 (internal citations omitted).

Plaintiff contends that limited discovery is needed to determine whether Jeffrey Thompson acted

under color of various laws, policies, regulations and customs established by the County to deprive

plaintiff of his constitutional rights.  Specifically, plaintiff seeks to determine whether Ocean County

(1) employed, supervised, trained or disciplined Thompson and other employees of the Ocean

County Sheriff's Office; (2) developed policies related to the offending conduct alleged in the

complaint; and (3) has a sufficient nexus with the Ocean County Sheriff's Office to confer *Monell*

liability.

Here, plaintiff's complaint has included Jeffrey Thompson as the only defendant from the

Ocean County Sheriff's Office.  Mr. Thompson has certified that the OCPO was in charge of the

plaintiff's criminal investigation and that the CIU worked, at all times, at the request and direction

of the OCPO.   Thompson Cert., Def. Reply, Ex. E, ¶¶ 11-12.  Therefore, limited discovery is not

needed to determine that the OCPO was the supervising authority over the CIU within the Ocean

County Sheriff's Office, meaning that the County cannot be held liable for Mr. Thompson's actions under counts 2 and 3 for supervisor responsibility as he was an agent of the OCPO.

## IV.    State Law Claims and the New Jersey Tort Claims Act

The County argues that plaintiff's state law claims should be dismissed as a matter of law because plaintiff did not serve the County nor Jeffrey Thompson with a notice of tort claim pursuant to New Jersey Tort Claims Act, N.J.S.A. 59:1-1 *et seq.*  Plaintiff acknowledges that he did not serve a notice of tort claim on the County, but argues that summary judgment should be denied on two grounds: (1) the  Tort Claims Act notice requirements does not apply to plaintiff's New Jersey Civil Rights Act ("NJCRA") claim in count five; and (2) discovery may demonstrate that the County had "actual receipt" of plaintiff's tort claim, under N.J.S.A. 59:8-10, through service of a notice of tort claim to the State of New Jersey, which identified the County of Ocean as an entity that caused him damage.

The New Jersey Tort Claims Act ("TCA") allows claimants to circumvent the doctrine of sovereign immunity to provide a limited measure of relief against the state or local public entity. *See* N.J.S.A. 59:1-2.  The TCA sets forth certain procedural requirements that a plaintiff must satisfy prior to filing suit against a public entity for damages.  N.J.S.A. 59:8-3.  Notice is one such requirement whereby a plaintiff must serve a notice of claim with a public entity within ninety days from when the cause of action accrues.  N.J.S.A. 59:8-8.  Otherwise, failure to serve a notice of claim forever bars claimant from recovering against that public entity or public employee.  N.J.S.A. 59:8-8;[1] *see also Karczewski v. Nowicki*, 188 N.J. Super. 355, 357 (App. Div. 1982); *Saldana v. City*

---

[1] N.J.S.A. 59:8-9 allows plaintiff to file a notice of late claim, but plaintiff here did not file a motion for leave to file a late claim notice before the Superior Court.

*of Camden*, 252 N.J. Super. 188, 198 (App. Div. 1991).

The TCA expressly defines how to identify the entity upon which service of the notice of tort claim is to be made.  N.J.S.A. 59:8-7.  The statute provides in full:

> A claim for damage or injury arising under this act against the State shall be filed either with (1) the Attorney General or (2) the department or agency involved in the alleged wrongful act or omission.  **A claim for injury or damages arising under this act against a local public entity shall be filed with that entity.**  *Id.* (emphasis added).

The County relies on this provision, and the bolded language in particular, to argue that plaintiff's notice of claim on the State does not satisfy plaintiff's obligation to file notice with the County, as a local public entity.  The New Jersey Supreme Court has determined that the statute requires notice to be provided directly to the named public entity.  In *McDade v. Siazon*, the court concluded that "[g]iven the interplay between the notice procedure and the responsible public entity's opportunity to plan for potential liability and correct the underlying condition, the Legislature required that the notice of claim be filed directly with the specific local entity at issue." 208 N.J. 463, 476 (2011) (internal citations omitted).

The TCA also describes the manner of service for the notice of tort claim on that public entity.  N.J.S.A. 59:8-10.  The statute provide in relevant part:

> A claim or application shall be deemed to have been presented in compliance with this section even though it is not delivered or mailed as provided in this section **if it is actually received at an office  of the State or local public entity within the time prescribed for presentation thereof.**  *Id.* (emphasis added).

The plaintiff relies on the statutory language in this provision (in bold) to argue that the County may have had actual notice because of the notice of tort claim filed with the state. Plaintiff argues that

limited discovery is required to determine if the County received notice from any source, including but not limited to, the Attorney General's office. The plaintiff does not cite to any case law to support his interpretation of "actually received" to mean "actual notice."

The issue of whether a notice of tort claim served on the Attorney General constitutes adequate notice, either actual or constructive, to other local public entities of the claim was addressed in *Epstein v. State*. 311 N.J. Super. 350, 356 (App. Div. 1998). In *Epstein*, the plaintiff filed a notice of tort claim with the Attorney General and argued that it also provided sufficient notice for his claims on the town of Hammonton and the city of Camden. The Court rejected this argument and held that:

> N.J.S.A. 59:8-2 and -10 make a clear distinction between a local public entity and the State. The Attorney General may receive a notice of claim against the State, but notice to the Attorney General is not tantamount to actual or constructive notice to a local public entity. See N.J.S.A. 59:8-10. The Legislature has clearly expressed that: 'A claim for . . . damages . . . against a local public entity shall be filed with that entity.' N.J.S.A. 59:8-7. *Id.*

Thus, the case law demonstrates that serving a notice of claim to a public entity does not constitute actual or constructive notice on a different public entity under the TCA.

The issue of whether the notice of claim requirement under the TCA applies to claims under the New Jersey Civil Rights Act ("NJ CRA") was squarely considered by the New Jersey Supreme Court in *Owens v. Feigin*. 194 N.J. 607 (2008). In *Owens*, the plaintiffs timely filed notices of claim on other public entities and employees that were named defendants, but did not serve a notice of claim on defendant, Mr. Feigin, M.D., a public employee. *Id.* at 610. The court reviewed the NJ CRA's legislative history and plain language, and determined that there are no procedural requirements prior to filing a NJ CRA claim. *Id.* at 611-13. The court also surveyed the case law

11

rejecting application of the TCA notice requirement into other statutory claims, such as New Jersey's Law Against Discrimination and Conscientious Employee Protection Act, or constitutional claims. *Id.* at 613. The court concluded that the TCA's notice requirement does not apply to a NJ CRA claim. *Id.* at 614. The district court assessed this issue differently in *Brown v. City of Camden (In re Camden Police Cases)*, and reasoned that the TCA should apply to NJ CRA claims. 2011 U.S. Dist. LEXIS 92314, n.4 (Aug. 18, 2011). However, the court did not hold that the TCA notice requirement applies to NJ CRA claims, because the plaintiff in that case did not allege a NJ CRA violation and therefore that issue was not before the court. *Id.* Furthermore, the New Jersey Supreme Court is in the best position to determine the interpretation of its state law. *See Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941).

Here, the plaintiff's cause of action accrued on June 15, 2009 when the district court ordered his release from prison. Although the plaintiff served a notice of tort claim on the State of New Jersey on August 24, 2009, he did not separately serve Ocean County with a notice of claim within the required 90 day period, nor did plaintiff seek leave to file a late notice of claim pursuant to N.J.S.A 59:8-8 and 59:8-9. Therefore , the County is entitled to judgment as a matter of law that plaintiff's state law claims against the County are forever barred for failure to file a notice of tort claim with the County itself in accordance with the TCA's notice requirement. However, plaintiff's NJ CRA claim survives summary judgment since it is not subject to the TCA's notice requirement under *Owens*. *Owens v. Feigin*. 194 N.J. 607 (2008). Plaintiff's state law claims are dismissed as a matter of law, except the NJ CRA claim in count five remains against the County and Mr. Thompson.

**V.**      **Conclusion**

For the reasons set forth above, the County's motion for summary judgment is granted in part, and denied in part.   Count 2 and 3 against the County and against Jeffrey Thompson are dismissed as a matter of law.   Plaintiff's state law claims are also dismissed as a matter of law with respect to the County and Jeffrey Thompson, except plaintiff may proceed with Count 1 and Count Five, the NJ CRA claim, against the County and Mr. Thompson.

**ORDER**

**IT IS** on this 12th day of September 2012:

**ORDERED** that the County of Ocean's motion for summary judgment (ECF No. 30) is granted in part, and denied in part; and it is further

**ORDERED** that the federal claims in Counts 2 and 3 of the Complaint are dismissed against the County of Ocean and against Jeffrey Thompson; and tort claims against the County of Ocean and Jeffrey Thompson included in Counts 4, 6, 7, 8, 9, 10, 11 and 12 are dismissed with prejudice.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

14