<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL KAMIENSKI<br><br>Plaintiff,<br><br>v.<br><br>ATTORNEY GENERAL FOR THE STATE OF NEW JERSEY, MARLENE LYNCH FORD, THOMAS F. KELAHER, JAMES W. HOLZAPFEL, RONALD DELIGNY, JOHN MERCUN, SAMUEL J. MARZARELLA, E. DAVID MILLARD, JAMES A. CHURCHILL, DANIEL MAHONEY, JEFFREY P. THOMPSON, OCEAN COUNTY PROSECUTOR'S OFFICE, and COUNTY OF OCEAN<br><br>Defendants. | Civil Action No. 11-3056 (PGS)<br><br><br>MEMORANDUM & ORDER |

<u>SHERIDAN, U.S.D.J.</u>

This matter comes before the Court on a motion for summary judgment in lieu of an answer submitted by defendants, Ocean County Prosecutor's Office ("OCPO") (ECF No. 32) and former and current prosecutors and investigators from the OCPO: Marlene Lynch Ford, Thomas F. Kelaher, James W. Holzapfel, Ronald Deligny, John Mercun Samuel J. Marzarella, E. David Millard, James A. Churchill, Daniel Mahoney, Jeffrey P. Thompson ("personally named OCPO defendants"). Plaintiff, Paul Kamienski, has filed a complaint alleging fourteen causes of action including: (1) § 1983 violations for suppression of material exculpatory evidence, fabrication of inculpatory evidence, malicious prosecution, and deliberate failure to investigate; (2) § 1983 supervisory liability; (3) § 1983 *Monell* claim; (4) state law claim for malicious prosecution; (5) violations of

New Jersey's Civil Rights Act, N.J.S.A. 10:6-2 *et seq*.; (6) intentional infliction of emotional distress; (7) abuse of process; (8) loss of reputation; (9) intentional interference with economic advantage; (10) actual and constructive fraud; (11) negligent misrepresentation; (12) negligence; (13) injunctive relief to expunge criminal record; and (14) injunctive relief generally. The OCPO and the individual OCPO defendants are seeking dismissal of plaintiff's § 1983 claims and state law claims based on Eleventh Amendment immunity, as well as absolute and qualified immunity. The Court heard oral arguments, and allowed supplemental briefing with respect to plaintiff's notice of claim under the New Jersey Tort Claims Act.

**I.     Facts and Procedural History**

This action arises out of plaintiff's 2009 exoneration from a 1988 jury conviction for murder. Plaintiff alleges that he was wrongfully and maliciously targeted, charged, arrested, prosecuted, convicted, and imprisoned for 21 years for two counts of first degree murder and one count of felony murder. The plaintiff relies on the following facts and allegations against the state and various state officials associated with his 1988 conviction- and subsequent reversal and vacation of that conviction- to establish his claims.

In September 1983, the Ocean County Prosecutor's office investigated the murder of two victims who were found in Barnegat Bay in Toms River, New Jersey. Compl.¶ 30. Two bodies were found bound in blankets, tethered to cinder blocks and apparently thrown overboard from a boat. *Id.* Both victims had died from multiple gunshot wounds. *Id.* These victims were discovered to be high volume cocaine sellers. *Id.* On October 7, 1987, plaintiff was charged with the following five counts of a seven count indictment, along with two other co-defendants: Counts One and Two: first degree murder of victims 1 and 2 (N.J.S.A. 2C:11-3a (1)-(2)); Count Five: first degree felony

2

murder of victims 1 and 2 (N.J.S.A. 2C:15-1; 2C:11-3a(3)); Count Six: conspiracy of possession with intent to distribute the cocaine after it had been stolen from the victims (N.J.S.A. 24:21-19a) and/or conspiracy to commit robbery in the first degree (N.J.S.A. 2C:15-1), and/or murder (N.J.S.A. 2C:11-3; 2C:5-2); Count Seven: conspiracy of possession with intent to distribute prior to the murders and robbery (N.J.S.A. 2C:5-2; 24:21-19a1). *Id.* at ¶ 31.

The state prosecuted plaintiff for murder on an accomplice liability theory, that is the plaintiff did not know of or plan the killings, but helped cover them up afterwards. *Id.* Additionally, plaintiff was not accused of being involved with the aborted drug deal, but the state determined that plaintiff had introduced the two victim sellers to the co-defendant buyers knowing they were contemplating a cocaine sale. *Id.*

On November 18, 1988 a jury found plaintiff guilty of Counts One, Two, Five, Six only as to the conspiracy to distribute, and Count Seven. *Id.* at ¶ 32. On December 21, 1988, following post-trial motions, the trial court entered a judgment of acquittal for Counts One, Two, and Five (hereinafter the "Murder Convictions") based on insufficiency of evidence. *Id.* at ¶ 34. The trial court affirmed plaintiff's convictions as to Count Six for conspiracy of possession with intent to distribute cocaine and Count Seven. *Id.* Based on the trial court's rulings, the plaintiff was sentenced to twelve years with six years of parole ineligibility as to Count Six and twelve years with four years of parole ineligibility as to Count Seven, to be served consecutively. *Id.* at ¶ 35. The state appealed the trial court's rulings and sought to reinstate the murder convictions. *Id.* at ¶ 36.

On February 19, 1992, the appellate division reversed the trial court's judgment of acquittal and reinstated the murder convictions. *Id.* at ¶ 37. Thereafter, the matter was remanded to the trial court for re-sentencing. *Id.* On April 10, 1992, plaintiff was re-sentenced to two life sentences with

3

thirty years parole ineligibility for the murder convictions and consecutive terms of twelve years imprisonment for the drug conspiracy convictions. *Id.* at ¶ 38. The New Jersey Supreme Court denied plaintiff's application for certification. *Id.* at ¶ 39. Plaintiff also filed various petitions for post-conviction relief, which were unsuccessful. *Id.* at ¶ 40.

On June 26, 2002, plaintiff filed a habeas petition under 28 U.S.C. § 2254 with the district court alleging, *inter alia*, that there was insufficient evidence adduced at trial to sustain the murder convictions. *Id.* Plaintiff later amended his habeas petition in September 2003 to include allegations that the state committed *Brady* violations by failing to produce exculpatory FBI forensic evidence. *Id.* at ¶ 41. The district court denied plaintiff's habeas petition on July 26, 2006. *Id.* at ¶ 42. Plaintiff timely appealed to the Third Circuit. *Id.* at ¶ 43. On May 28, 2009, the Third Circuit issued a unanimous opinion that reversed the district court's denial of plaintiff's habeas petition and further held that there was insufficient evidence adduced at trial to support the murder convictions. *Id.* at ¶¶ 45-46. The matter was remanded to the district court to grant the habeas petition and order plaintiff's immediate release from state custody. *Id.* at ¶ 45. On June 15, 2009, the district court ordered plaintiff's release from custody with certain bail conditions, such as travel restrictions and regular, periodic reporting requirements. *Id.* at ¶ 48. Meanwhile, the state sought reconsideration of the Third Circuit's decision. *Id.*

On June 16, 2009, plaintiff was released from incarceration after serving 21 consecutive years. *Id.* at ¶¶ 49-51. In July 2009, the Third Circuit denied the state's motions for reconsideration and for *en banc* review. Compl. ¶¶ 52-54. The Third Circuit issued its mandate on plaintiff's appeal, and denied the state's motion to stay or withdraw the mandate. *Id.* On July 30, 2009, the district court granted plaintiff a writ of habeas corpus consistent with the Third Circuit's decision, vacated

plaintiff's judgment of conviction, released plaintiff from further confinement for the charges, and expunged the conviction and the charges form his criminal record. *Id.* at ¶ 55. In September 2009, the state filed a petition of certiorari to the U.S. Supreme Court to reverse the Third Circuit's exoneration ruling, but certification was denied. *Id.* at ¶ 56-57.

On January 20, 2010, the district court vacated all conditions of bail that were imposed since plaintiff's release on June 16, 2009. *Id.* at ¶ 58. Once the state exhausted the appeals process, the plaintiff commenced this action, and a separate action in state court pursuant to New Jersey's mistaken imprisonment statute, N.J.S.A. 52:4C-1 *et seq.*, captioned *Paul Kamienski v. State of New Jersey Dept. Of Treasury*, MER-L-2106-10. *Id.* at ¶ 59–60. In this action, plaintiff's complaint makes allegations against the defendants collectively, and does not make specific allegations as to each defendant. Prior to filing these actions, plaintiff served a notice of tort claim on the State of New Jersey, but did not serve a notice of tort claim on the County of Ocean, nor the Ocean County Prosecutor's office, nor the individual OCPO defendants.

## II.     Summary Judgment Standard

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be

drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgement. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor – that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. App'x. 222, 227 (3d Cir. 2007).

### III.    Discussion

Plaintiff has raised Section 1983 claims against the OCPO and the individual OCPO defendants for suppression of material exculpatory evidence, fabrication of inculpatory evidence, malicious prosecution, and deliberate failure to investigate, and supervisory liability. The OCPO and the individual OCPO defendants move for summary judgment against plaintiff's Section 1983 claims on the basis of Eleventh Amendment immunity as well as absolute and qualified immunity. Plaintiff

6

concedes that his Section 1983 claims against the OCPO and the individual OCPO defendants sued in their official capacity are barred by sovereign immunity under the Eleventh Amendment.

However, plaintiff maintains his Section 1983 claims against these defendants in their individual capacities. The OCPO and the individual OCPO defendants are also seeking dismissal of plaintiff's Section 1983 claims in their individual capacity based on absolute and qualified immunity. Plaintiff alleges that defendants violated his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. In so doing, plaintiff argues that these defendants are not entitled to absolute or qualified immunity for their non-prosecutorial actions that allegedly violated plaintiff's constitutional rights. Plaintiff contends that pursuant to Fed. R. Civ. P. 56(d), a grant of summary judgment is premature absent discovery to discern the prosecutorial and non-prosecutorial actions of the individual OCPO defendants.

The OCPO defendants here also move for summary judgment against plaintiff's state law claims because of plaintiff's failure to file a notice of tort claim directly on the OCPO defendants as required under New Jersey Tort Claims Act, and the OCPO defendants argue that they are entitled to immunity granted to public employees under the TCA.

### A.  **Eleventh Amendment Immunity**

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State." U.S. Const. amend XI. Therefore, under the Eleventh Amendment, "neither a State nor its officials acting in their official capacities may be sued for monetary relief under § 1983" unless the State has waived its Eleventh Amendment immunity". *Hyatt v. Cnty of Passaic*, 340 Fed. App'x 833, 836 (3d Cir. 2009) (internal citations omitted).

Eleventh Amendment immunity also applies to suits in federal courts for state law claims, unless the State has waived immunity. *Beightler v. New Jersey*, 2008 U.S. Dist. LEXIS 102154, at *6-9 (D.N.J. Dec. 16, 2008); *see also Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 540-43 (2002).

Eleventh Amendment immunity also extends to entities and person who can demonstrate that even though the state is not a named defendant, "the state is the real party in interest. *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989). To determine whether the state is the real party in interest, the Third Circuit established a three-factor test: (1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law; and (3) the entity's degree of autonomy. *Id.* In this Circuit, courts have applied the *Fitchik* factors and determined that the county prosecutor's office and its officials acting in their official capacity are an "arm of the state" and thus entitled to Eleventh Amendment immunity against Section 1983 claims. *Davis v. Twp. of Lakewood*, 2005 U.S. Dist. LEXIS 16420, at *3 (D.N.J. Aug. 4, 2005); *see also Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996); *Brown v. City of Camden (In re Camden Police Cases)*, 2011 U.S. Dist. LEXIS 92314 (D.N.J. Aug. 18, 2011); *Landi v. Borough of Seaside Park*, 2009 U.S. Dist. LEXIS 17932 (D.N.J. Mar. 6, 2009).

To properly assert a claim under Section 1983, a plaintiff must allege (1) a violation of a right secured by the U.S. Constitution or federal law, and (2) that the deprivation was committed by a "person" acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). *See also Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). However, the U.S. Supreme Court held that "[n]either a state nor its officials acting in their official capacities are 'persons' acting under color of state law" within the meaning of Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Court further noted that Congress did not intend to abrogate the Eleventh Amendment

immunity afforded to the state and its official acting in an official capacity. *Id.* Therefore, as defendants argued and plaintiff's concede, a Section 1983 claim cannot exist against the State of New Jersey, which includes the Ocean County Prosecutor's Office, its agencies, or its officials, and prosecutors, acting in their official capacities.

### B. Absolute and Qualified Immunity

The Eleventh Amendment does not preclude suit against private individuals. *See, e.g., Davis v. Twp. of Lakewood*, 2005 U.S. Dist. LEXIS 16420, at *24 (D.N.J. Aug. 4, 2005). The individual OCPO defendants argue that they are entitled to absolute and qualified immunity with respect to plaintiff's Section 1983 claims.

The seminal case for prosecutorial immunity is *Imbler v. Pachtman,* when the U.S. Supreme Court extended absolute immunity to prosecutors when their "activities were intimately associated with the judicial phase of the criminal process. 424 U.S. 409, 430 (1976). The Court held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Id.* at 431. The Supreme Court later clarified in *Buckley v. Fitzsimmons*, that a prosecutor's acts of investigation or administration are not absolutely immune, but protected by qualified immunity. 509 U.S. 259, 270 (1993). There also may be "situations in which a prosecutor is found to have acted outside any legitimate prosecutorial role," and in that instance, no immunity is available. *Rose v. Bartle*, 871 F.2d 331, 343 (3d Cir. 1989).

To determine if a prosecutor's actions are entitled to absolute or qualified immunity, a "functional approach" is applied that looks to "the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269 (internal citations omitted); *see also Giuffre v. Bissell*, 31 F.3d 1241, 1251 (3d Cir. 1994). As for the determination of whether qualified

9

immunity shields an officer from civil damages, the court is to examine whether (1) the official's conduct violated a plaintiff's constitutional or statutory rights, and (2) the right was "clearly established," that is, the official mistakenly, but reasonably believed, his conduct was lawful at the time. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Here, the plaintiff has alleged generally that defendants have violated his constitutional rights, and has not set forth any alleged actions directly against the individual OCPO defendants, nor has the plaintiff articulated any alleged non-prosecutorial actions. Based on the facts presented, the Court cannot apply a "functional approach" analysis, nor examine an official's conduct and reasonableness under the qualified immunity test to determine if the individual defendants are entitled to immunity. The Court recognizes that immunity issues should be resolved at the earliest possible stage of litigation, but grant of summary judgment is inappropriate at this time given the extensive procedural history of the plaintiff's underlying criminal case, the length of imprisonment, and the four year investigation that preceded his conviction. *Saucier v. Katz*, 533 U.S. 194, 200 (2001) ("[t]he privilege is 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."). The Court will grant plaintiff leave to file an amended complaint to make specific allegations against the individual OCPO defendants. The court will also grant plaintiff's Fed. R. Civ. P. 56(f) application, and directs the parties to engage in limited discovery as to the immunity defense. The discovery will be limited to address whether any of the individually named defendants (1) performed non-prosecutorial functions during the criminal investigation and during the judicial phase; (2) had any personal involvement in the alleged misconduct; and (3) unreasonably violated plaintiff's well established constitutional and statutory rights.

### C. State Law Claims and the New Jersey Tort Claims Act

The defendants here argue that plaintiff's state law claims should be dismissed as a matter of law against because plaintiff did not serve the OCPO nor the individual OCPO defendants with a notice of tort claim pursuant to New Jersey Tort Claims Act, N.J.S.A. 59:1-1 *et seq.* Plaintiff acknowledges that he did not serve a notice of tort claim directly on these defendants, but argues that summary judgment should be denied because: (1) the Tort Claims Act notice requirements does not apply to plaintiff's New Jersey Civil Rights Act ("NJCRA") claim in count five; and (2) discovery may demonstrate that the County had "actual receipt" of plaintiff's tort claim, under N.J.S.A. 59:8-10, through service of a notice of tort claim to the State of New Jersey, which identified the OCPO as an entity that caused him damage.

The New Jersey Tort Claims Act ("TCA") allows claimants to circumvent the doctrine of sovereign immunity to provide a limited measure of relief against the state, or a local public entity and public employees. *See* N.J.S.A. 59:1-2. The TCA sets forth certain procedural requirements that a plaintiff must satisfy prior to filing suit against the state for damages. N.J.S.A. 59:8-3. Notice is one such requirement whereby a plaintiff must serve a notice of claim with a public entity within ninety days from when the cause of action accrues. N.J.S.A. 59:8-8. Otherwise, failure to serve a notice of claim forever bars claimant from recovering against that public entity or public employee. N.J.S.A. 59:8-8;[1] *see also Karczewski v. Nowicki*, 188 N.J. Super. 355, 357 (App. Div. 1982); *Saldana v. City of Camden*, 252 N.J. Super. 188, 198 (App. Div. 1991).

The OCPO defendants argue that the TCA also provides for prosecutorial immunity. The

---

[1] N.J.S.A. 59:8-9 allows plaintiff to file a notice of late claim, but plaintiff here did not file a motion for leave to file a late claim notice before the Superior Court.

statute provides that "a public employee is not liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature." N.J.S.A. 59:3-2(b). The TCA further provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment." N.J.S.A. 59:3-8. The OCPO defendants argue that county prosecutors are considered state employees, and are entitled to prosecutorial immunity conferred under the TCA, provided their conduct is not outside the scope of employment because of "a crime, actual fraud, malice or willful misconduct." N.J.S.A. 59:3-14(a); *Coleman v. Kaye*, 87 F.3d 1491, 1500-02 (3d Cir. 1996); *Dunne v. Fireman's Fund Amer. Ins. Co.*, 69 N.J. 244, 248 (1976).[2]

The TCA expressly defines how to identify the entity upon which service of the notice of tort claim is to be made. N.J.S.A. 59:8-7. The statute provides in full:

> A claim for damage or injury arising under this act against the State shall be filed either with (1) the Attorney General or (2) the department or agency involved in the alleged wrongful act or omission. **A claim for injury or damages arising under this act against a local public entity shall be filed with that entity.** *Id.* (emphasis added).

The New Jersey Supreme Court has determined that the statute requires notice to be provided directly to the named public entity. In *McDade v. Siazon*, the court concluded that "[g]iven the interplay between the notice procedure and the responsible public entity's opportunity to plan for potential liability and correct the underlying condition, the Legislature required that the notice of claim be filed directly with the specific local entity at issue." 208 N.J. 463, 476 (2011) (internal

---

[2] County prosecutors possess a hybrid status: "The prosecutor, a State officer, selects and supervises them. The financial burdens related to the position are imposed on the county." *Dunne*, 69 N.J. at 248.

citations omitted). The OCPO defendants argue the plaintiff's notice of claim on the State of New Jersey, Department of Treasury related to plaintiff's state court action does not extend notice on the OCPO defendants, and that plaintiff is improperly attempting to blur the distinction between the State of New Jersey, Department of Treasury and the Attorney General.

The TCA also describes the manner of service for the notice of tort claim on that public entity. N.J.S.A. 59:8-10. The statute provide in relevant part:

> A claim or application shall be deemed to have been presented in compliance with this section even though it is not delivered or mailed as provided in this section **if it is actually received at an office of the State or local public entity within the time prescribed for presentation thereof.** *Id.* (emphasis added).

The plaintiff relies on the statutory language in this provision (in bold) to argue that the OCPO defendants may have had actual notice because of the notice of tort claim filed with the state. Plaintiff argues that limited discovery is required to determine if OCPO defendants had received notice from any source, including but not limited to, the Attorney General's office. The plaintiff does not cite to any case law to support his interpretation of "actually received" to mean "actual notice."

The issue of whether a notice of tort claim served on the Attorney General constitutes adequate notice, either actual or constructive, to other local public entities of the claim was addressed in *Epstein v. State*. 311 N.J. Super. 350, 356 (App. Div. 1998). In *Epstein*, the plaintiff filed a notice of tort claim with the Attorney General and argued that it also provided sufficient notice for his claims on the town of Hammonton and the city of Camden. The Court rejected this argument and held that:

> N.J.S.A. 59:8-2 and -10 make a clear distinction between a local public entity and the State. The Attorney General may receive a notice of claim against the State, but notice to the Attorney General is not tantamount to actual or constructive notice to a local public entity. See N.J.S.A. 59:8-10. The Legislature has clearly expressed that: 'A claim for . . . damages . . . against a local public entity shall be filed with that entity.' N.J.S.A. 59:8-7. *Id.*

Thus, the case law demonstrates that serving a notice of claim to a public entity does not constitute actual or constructive notice on a different public entity under the TCA.

The issue of whether the notice of claim requirement under the TCA applies to claims under the New Jersey Civil Rights Act ("NJ CRA") was squarely considered by the New Jersey Supreme Court in *Owens v. Feigin*. 194 N.J. 607 (2008). In *Owens*, the plaintiffs timely filed notices of claim on other public entities and employees that were named defendants, but did not serve a notice of claim on defendant, Mr. Feigin, M.D., a public employee. *Id.* at 610. The court reviewed the NJ CRA's legislative history and plain language, and determined that there are no procedural requirements prior to filing a NJ CRA claim. *Id.* at 611-13. The court also surveyed the case law rejecting application of the TCA notice requirement into other statutory claims, such as New Jersey's Law Against Discrimination and Conscientious Employee Protection Act, or constitutional claims. *Id.* at 613. The court concluded that the TCA's notice requirement does not apply to a NJ CRA claim. *Id.* at 614. The district court assessed this issue differently in *Brown v. City of Camden (In re Camden Police Cases)*, and reasoned that the TCA should apply to NJ CRA claims. 2011 U.S. Dist. LEXIS 92314, n.4 (Aug. 18, 2011). However, the court did not hold that the TCA notice requirement applies to NJ CRA claims, because the plaintiff in that case did not allege a NJ CRA violation and therefore that issue was not before the court. *Id.* Furthermore, the New Jersey Supreme Court is in the best position to determine the interpretation of its state law. *See Railroad*

14

*Comm'n v. Pullman Co.*, 312 U.S. 496 (1941).

Here, the plaintiff's cause of action accrued on June 15, 2009 when the district court ordered his release from prison. Although the plaintiff served a notice of tort claim on the State of New Jersey, Department of Treasury on August 24, 2009, he did not separately serve the OCPO defendants with a notice of claim within the required 90 day period, nor did plaintiff seek leave to file a late notice of claim pursuant to N.J.S.A 59:8-8 and 59:8-9. Therefore, the OCPO defendants are entitled to judgment as a matter of law that plaintiff's state law claims against are forever barred for failure to file a notice of tort claim with the OCPO itself in accordance with the TCA's notice requirement. However, plaintiff's NJ CRA claim survives summary judgment since it is not subject to the TCA's notice requirement under *Owens*. *Owens v. Feigin*. 194 N.J. 607 (2008). Accordingly, count five is not dismissed against the OCPO defendants.

### **V.**     **Conclusion**

For the reasons set forth above, the OCPO and the personally named OCPO defendants' motion for summary judgment is granted in part, and denied in part. Plaintiff's Section 1983 claims against the OCPO are dismissed as a matter of law. Plaintiff has voluntarily dismissed his Section 1983 claims that sue the personally named OCPO defendants in their official capacity, but seeks to maintain the suit in their individual capacity. As such, plaintiff is granted leave to file an amended complaint to bring suit against the personally named OCPO defendants in their individual capacity and to seek limited discovery on the question of immunity. Plaintiff's state law claims are dismissed as a matter of law, except the NJ CRA claim in count five remains.

## ORDER

**IT IS** on this 11th day of September 2012:

**ORDERED** that the Ocean County Prosecutor's Office ("OCPO") and the personally named OCPO defendants' motion for summary judgment (ECF No. 32) is granted in part, and denied in part; and it is further

**ORDERED** that plaintiff's Section 1983 claims in Counts 1, 2, and 3 against the OCPO are dismissed with prejudice; and it is further

**ORDERED** that the Section 1983 claims against the personally named OCPO defendants in their official capacity in Counts 1, 2, and 3 are dismissed; and it is further

**ORDERED** that plaintiff is granted leave to amend his complaint within 30 days to add more specific factual allegations against the personally named OCPO defendants and to sue them in their individual capacity with regard to Counts 1, 2 and 3; and it is further

**ORDERED** that plaintiff's Fed. R. Civ. P. 56(d) application is granted, and the parties are directed to engage in limited discovery as to the immunity defense with respect to plaintiff's Section 1983 claims against the personally named OCPO defendants in their individual capacity; and it is further

**ORDERED** that all of plaintiff's state law claims in Counts 4, 6, 7, 8, 9, 10, 11 and 12 against the OCPO defendants are dismissed with prejudice.

<i>s/Peter G. Sheridan</i><br>
PETER G. SHERIDAN, U.S.D.J.

September 12, 2012